Good morning, Your Honors. May it please the Court, Conrad Schroeder, Deputy Attorney General for the appellant in this matter, Warden Madeline Muntz, and I would like to reserve two minutes. The issue before us today is whether repeated denials of parole based on a commitment offense violate a life inmate's federal right to due process, and the answer is no, not under federal law. In this case, the district court granted federal habeas corpus based on Biggs v. Tarrakoon, which is not clearly established federal law. In order for something to be clearly established federal law, it has to be, or actually, for a district court to grant habeas corpus, the state court decision must be on the merits, and it has to run contrary to clearly established federal law, or be an unreasonable determination of the facts in light of the evidence before the court. Now, in this case, the district court agreed with defining the fact of the state courts, in essence, finding that the circumstances of the crime were more than the minimum necessary to find Mr. Kunkler guilty of second-degree murder, and the court, in fact, cited Dannenberg, the state court decision, which gives the governor and the board the ability to deny parole based solely on the commitment offense if the circumstances are more than the minimum necessary. So, therefore, the only issue before the court here today is whether Biggs is clearly established federal law. Even if it's not. I understand that part of your argument. Isn't SAS just lurking all over this case? Well, if you'd like me to address SAS, it certainly does. SAS pretty much addresses the fundamental issues of this case. Sure, I mean, SAS has really overtaken Biggs, hasn't it, in terms of the analytical framework that we're dealing with today? Yes, Your Honor, because in SAS, they found that basically they addressed the Biggs issue. SAS was a Biggs case. In Biggs, initially, the R&R that was granted of the magistrate judge recommending that Biggs be granted, you know, based his opinion on Biggs. The district court rejected that. It went up into this court, and at that level, it was a Biggs case. And this court in Biggs found that it was not clearly established. They didn't specifically make that statement, but they specifically rejected it. And in doing so, I mean, that's really taking care of the whole Biggs issue. Now, what SAS did that we didn't agree with was find that there is a federal liberty interest in parole, which we disagree with, and that's currently up or a hearing has been requested on that issue. So we're left with sort of the sum evidence. Right. Well, let's assume for the sake of argument that SAS, well, of course, we're bound by SAS anyway, regardless of the fact of how the petition for a hearing comes out. But assuming that the petition for a hearing is denied, how do you apply SAS to this case? Well, how we apply SAS, I'm sorry we didn't get a chance to properly brief it because it came out after the hearing. Well, that's what oral argument's for, so go ahead. That's fine. In SAS, basically, being a Biggs case, they rejected it. And the point that the SAS court made was in Biggs, they found him, you know, they accepted the fact that he was not suitable parole based solely on the commitment of facts. So what was said in Biggs is dicta. And in order for something to be clearly established federal law, it can't be from dicta. It has to be from the holding, not from the dicta. And also, it has to be United States Supreme Court jurisprudence. And that's, you know, from William C. Taylor, which is cited in the papers. So really, it's not clearly established federal law. It's just the thoughts of the court stating at some point maybe it could be a due process violation, but it's tentative and it's equivocal. It doesn't say when. And in Biggs, they found him, they found it okay that he was unsuitable for parole based solely on the commitment of facts. And in Biggs, I mean, in SAS, it was the same thing. They found him unsuitable for parole based on the commitment of facts. And in SAS, this was a drunk driver that had killed somebody in the process of ‑‑ Well, it was a commitment of facts and priors. Yeah, but the priors were very minimal. And, you know, they were more minimal than Cunkler's, which were, you know, not, you know, not accepted by the superior court in the California courts in the Cunkler case. It ends up being a commitment of facts only. But Mr. Cunkler's priors were much more serious than Mr. SAS's priors. So, really, it ends up being in both ‑‑ in all three cases, in Biggs, in SAS, and in Cunkler, that it's based on the commitment of facts. And if you look at the commitment of facts, in Biggs, you have someone who's a co‑conspirator rather than someone who actually pulled the trigger. And in this case, the Cunkler case, he's the one that armed himself, nodded the mask, went in there, he's the one that pulled the trigger, and then afterwards dragged him over to the bed in a headlock, robbed him, and then left him there to die and went back to a party and continued partying. Those facts are more egregious than Biggs. And in Biggs, they found that they could rely on the commitment of facts. Well, it does have a fairly profound effect. I think the last ‑‑ the latest statistics I saw, you had 28,000 inmates with similar sentences that would be affected by this, and maybe SAS takes care of it. But that's a lot of folks to say, well, you're never going to have parole because of the nature of your offense. Well, Your Honor, I mean, there's no ‑‑ I mean, SAS had a fairly good case of rehabilitation. And it's a ‑‑ I mean, it does have some pretty far‑reaching effects. We say you're not ‑‑ even though we said you were eligible for parole, you really aren't because of the nature of your offense. Well, there's a couple of points there, Your Honor. Each ‑‑ point number one is really that each one of these hearings and each ‑‑ when it goes through the process for the hearing and the governor's review, each one of those things is an element all in its own. And in each case, just because it's the timing and the gravity of the commitment offense. If something ‑‑ at some point, you know, the board or the governor can find him suitable for parole. Well, the board does. You know, it's just the governor. And under California law, he has that right to do so. And under Dannenberg and Rosenkranz, he did what was necessary to do. And what he did was acceptable under Superintendent Vigil as far as the evidence that was provided, the sum evidence, the minimally stringent evidence that is required in a case like this. But it doesn't mean that it's going to be the same outcome every time. Well, do you think it would violate due process if a governor took the position that he or she would never grant parole, period? That's not what this case is, Your Honor. I didn't ‑‑ I said hypothetically. If I didn't say hypothetically, I'm ‑‑ Well, I don't want to create dicta that doesn't have anything to do with this case, Your Honor. No, but I think clearly you couldn't say we're never going to grant parole as a policy. That's ‑‑ that certainly would ‑‑ that may have ‑‑ well, that could affect federal due process rights. But that's not the case in this case. No, but it's somewhat close to say no murderers, for example, are going to get parole based on the offense, too. And that could be ‑‑ it's a little closer to this case. It's not this case, but it's a little closer. Well, that was the original claim of Rosenkranz. Yes. And that was rejected by the California Supreme Court. You know, the whole underlying belief that, you know, the statement that, you know, if you're a murderer, forget about it. I mean, we're already on to a different governor here. And that's ‑‑ it's a whole different situation. And even if it was, you know, under Rosenkranz, that was found not to be a violation. Yes, we dealt with a similar issue in Serapong's, as I recall, too. It was a capital case, but a similar issue. Do you want to reserve some time for rebuttal? Yes, Your Honor. Just ten minutes. I think that's all I have left. About a minute and a half. Thank you, Your Honor. Now, Mr. Hanson, I'm ready for you. Good morning, Your Honor. Roger Hanson, H-A-N-S-O-N, appearing for Mr. Kunkler. I would urge this Court to affirm what Judge Terry Hatter did in granting this writ. And I think it's very clear that the whole starting point is the California Penal Code Section 3048. And if I may quote that, I'm sure the Court knows about it, but it says, 3041B, the panel or board shall set a release date unless it determines that the gravity of the current or convicted offenses or offenses or the timing and gravity of current or past convicted offenses is such that consideration of the public safety requires a more lengthy period of incarceration for this individual. Now, here we have two parole boards that have found, based on state psychiatrists, state psychologists, that this man is not a danger to the community. As a matter of fact, they even cite it in terms of he poses less of a danger than the average citizen to society. He has an exemplary prison record. Judge Hatter found that. And the parole board, in granting him the parole, said, well, you've done very well. And you understand that you can't change the nature of this crime. You can't change what happened before you committed this crime. And that gets to the liberty interest concept. And, therefore, you've got to understand that we're going to give you parole. You've got to go to AA meetings, do the various things you can do. And they granted him parole. And I think they adhered to the statute of California, which I just quoted, in citing that he was eligible for parole based on psychiatrists. They're not my psychiatrists. They're not Mr. Kunkler's psychiatrists. They're state psychiatrists that interview repetitively people in this category, and I think that you've got to adhere to what they come out with. Governor Schwarzenegger, on the other hand, says, well, I don't think he should be released because I think he poses a danger to society. He doesn't say why he does. And so you have a governor who's not trained in psychiatry, not trained in psychology, substituting in without giving any reasons why he thinks that he's a danger to society. And I think that that is one of the crux of this case. This case is really a textbook case for the liberty interest because this man has done twice, over twice the amount of time that he would have done for second-degree murder. And I think Judge Hatter correctly points out that one of the functions of prison is rehabilitation, and this gentleman has demonstrated great rehabilitation, and that's another factor that Judge Hatter hung his hat on in granting this writ. I'd like to ---- How do you deal with SAS? What's that? How do you deal with our decision in SAS? Well, SAS clearly established a liberty interest, a federal liberty interest, and it affirmed the state liberty interest. I think SAS is probably to be distinguished on the facts of the case itself, and I want to address a couple of cases that I think put a different light on what some evidence, the concept of, quote, some evidence, unquote. I handled a case, which I'm citing here, Ingray-Elkins. I'm sorry, Ingray-Lee, 143 Cal F, 4th, 1400. I didn't get that to the court because after it was ordered published and the writ was granted, they sought depublication of it. A couple days ago, the Chief Justice of California indicated that it would remain published. So that case stands for the proposition that the, quote, some evidence, unquote, concept, must direct itself toward the predictability of danger to the community and not focus on what he did before he committed the crime and the nature of the crime. Because if you devote to that focus on it, he would never, never get out. And Judge Hatter points that out, that he would not get out unless you have a different governor or he would change his mind on it or something of that nature. The facts of the case will never change. The facts of what he did beforehand will never change. And so he's doomed to have a life term where he did have parole. And I think that also negates plea bargaining. In this case, the case was plea bargained by Mr. Kunkler for second-degree murder, with the proposition that he would eventually get parole. And it essentially has been denied him. It's almost a situation like the recent case of Cunningham v. California, which the Supreme Court held a few days ago that California's determinant or their sentencing scheme of lower and mid and high term violated the Constitution because it had to be submitted to the jury and found true beyond a reasonable doubt. Here a man plea bargains, which I think is one of the functions of the court system, for what he got for second-degree murder, and then he is ordered to do really twice as much time. So the concept of he one of the governors said, well, he hasn't done enough time. Well, the record indicates he's done over twice the amount of time that he would have to do for second and really more time than he did for first-degree murder. And so you have a gentleman who's been rehabilitated and has been found by the psychiatrist in the state of California to not pose a risk of harm if he's released, and you have the only turning over by the governor of California who certainly is not trained in that area. And I think this court has got to speak on this. This is a far different situation that I think has got to be addressed. If I may quote briefly from my case of Wen Lee, I don't have the exact page of the 1400 site that says, the attorney general argues that so long as, quote, some evidence, unquote, which may be as little as a modicum supports the governor who must affirm, citing cases. We conclude, however, that the governor erred. The test is not whether some evidence supports the reasons the governor cites for denying parole, but whether some evidence indicates that parolees release unreasonably endangers public safety. And so this case properly focuses on the prediction of what he may pose as harm to the public if he is released, which is a requirement of the California Parole Board in deciding whether it gets parole or not. And Elkins. What was the citation of that case? I missed it when you gave it. 143, Cal Lap, 4th, 1400. That's Wen Lee. And Elkins, to the same extent, is 144, Cal Lap, 4th, 475. I was going to submit slips to the court this morning. That's fine. Yes, we're out of slips, but I understand that you disclosed these prior to argument to your co-counsel. I did, yes, I did. And I think this case is really a classic case that requires this court to confront the concept of liberty interest versus what the parole board has found, that he is not unreasonable at risk of danger to society, and not allow the governor of California to substitute himself in as an untrained psychologist or psychologist and never giving reasons for his opinion. He never gives a reason for it. He simply says, I feel he's a danger to society. And that just is not justified with this record. This record does not support that. Do we have to have a Supreme Court case to hinge on if we're going to rule for you? I think not, Your Honor. The Rosencrantz case, which is also published, and the citation on that, I'm going to send that to the court as well. Rosencrantz came out of the Supreme Court and then went. Okay. This is a district court case, Rosencrantz v. Marshall, 444, Fed Supplement 2nd, 1063. That case says, I don't know if it's dicta or not, but it says that there's other cases that can be used other than a Supreme Court case that you can hang your hat on. Well, I'm worried about ADPA. You know, the federal laws established by the Supreme Court of the United States and so on. Well, in my opinion, Your Honor, cases like Greenholz v. Nebraska Prison Board says that if there is no governing statute for parole, you're not entitled to get parole. But certainly here, California has a well-documented parole scheme. So I say that that case inversely applies here to say that the California parole scheme is what's at issue here, and it's the interpretation of that state law that is at issue here. And I think it's very clear in my mind that this case is really a classic textbook case for the principle that the liberty interest here has been violated. He's been up eight times. And it's not going to change, Your Honor. And if you don't give relief here, you've really negated the whole California parole scheme. If the Court has any questions, I would like to address them. I think we have it in hand. Thank you. Thank you for your argument. I will submit these authorities by fact. Yes, please. All right, Your Honor. Thank you very much. Actually, if you just handwrite them, I think you could photocopy them for us, because you have the citations today. So no need to fax it. Just drop them off on a yellow sheet of paper with our clerk afterwards. All right, Your Honor. I'll do that. Thank you. The appellee in this case is asking you to re-weigh the evidence. And Superintendent McHale, which since SASS seems to be what the law is on some evidence, it really is a minimally stringent standard. And it's not for this Court to re-weigh that evidence. And so that's all the issue as to what one psychiatrist says versus what the governor and what the governor's training is. It's not relevant here. The governor has this authority to do this. The governor has exercised it. And he has given his some evidence as to why he has done what he has done. Recently, I submitted some additional authority, Cary v. Moose Lydine, which talks about whether something's clearly established from federal law. And without discussing that in great detail, the Supreme Court has narrowed down the focus. That was the case in which they had victims of a crime wearing buttons during trial, and it was basically the Supreme Court said that the issues as to whether something is prejudicial doesn't really get into the issue of whether private parties wearing buttons is prejudicial. So that's not clearly established law. And here in Biggs, you know, we see what a stringent standard it is. You have to have Supreme Court jurisprudence, and it has to be clearly established, which is not in this case. As far as Elkins and Lee, these cases, these are appellate court decisions. Mr. Kunkler was found, some evidence was found by the California Supreme Court, which is a higher authority based on Rosencrantz and Dannenberg, which are its own holdings. Whether the issue between their holdings and lower court holdings is a matter for California courts to work out amongst themselves and not this court under Adiba. And as far as whether he gets the issue about Cunningham, whether it's low, middle, or high, Mr. Kunkler was sentenced to life imprisonment. And while there may be a possibility of parole, life with the possibility of parole, that's not a mandatory parole. He has to be found suitable for parole first. And in Biggs and Mr. Hanson, they look at the rehabilitative side of incarceration. And that's an important part of incarceration. But there's other aspects of incarceration as well. And number one in California, looking at the statutes, is public safety. Public safety is paramount in California. That is the primary concern. That's why the board, the basis for the board's decision and the basis for the governor's decision. Rehabilitation. Yeah. As far as public safety goes, the board says the public will be just fine. Excuse me, Your Honor? As far as public safety goes, the parole board says public safety won't be endangered at all by this man's release. Well, under California's scheme, the governor has the last word on this, and the governor has found that he would pose a public safety issue. Yes, I think Judge Kamen was pointing to your statement that the board has spoken on public safety, but it didn't speak in your favor on public safety in this case. Well, it's a process, Your Honor. And, Your Honor, it starts off with the board. The board can reject and the governor can reverse it if there's a grant. And it's California's system, and it's the one that's been found constitutionally sound. There's nothing saying that it's not constitutionally sound. It is an odd system when the standard is some evidence, which implies evidence, and it seems to be interpreted as being there are some reasons. There's some difference and some tension. That evidence seems to imply an administrative process by which some factors are introduced into evidence or at least some testimony taken as it was before the parole board. A similar process doesn't occur in the governor's office, certainly by necessity and by the nature of it, but it's awfully hard to look at the some evidence standard as applied to what really is a decision, not a decision based on new evidence taken. Well, Your Honor, the reason why it's a some evidence standard is not some higher standard. It's that Mr. Conkler and all these life inmates, they've already been convicted in a court of law. So the issue isn't whether they're being convicted or not. The issue is an administrative decision in which whether he is suitable or not. And the issue we come back to is whether Biggs has clearly established federal law, and it's clearly not. And the district court and a lot of the district courts have been wielding Biggs a twig of dicta like a sword. And SAS has finally broke that twig. Well, I suppose one option is to remand in light of SAS once it's final, too, and have Judge Hatter reconsider all these matters anew with the evidence. I suppose that's an option. I gather you would not favor that option. I would favor reversal, Your Honor. But your options are the court's options. I reasonably believe SAS will be final fairly soon, one way or the other. And I can't predict the outcome of that, but I think we could hold up for the finality of SAS, and if we do, it shouldn't be too long. So that's just informational. Okay. Thank you, Your Honor. The case is here to be submitted. We'll proceed to the final case on the oral argument calendar, which is Sentience Studio v. Security Insurance Company. The case of Specter v. Citibank is submitted on the briefs.
judges: Canby, Thomas, Conlon